**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | |
|---|---|
| Insurance Products Marketing, Inc., Donald R. Feldman, and Feldman Insurance Consultants, <br><br>    Plaintiffs, <br><br>  v. <br><br>Conseco Life Insurance Company, Conseco Senior Health Insurance Company, Conseco Health Insurance Company, Conseco Annuity Assurance Company, Conseco Marketing, LLC, <br><br>    Defendants. | Civil Action No.: 9:11-cv-01269-PMD <br><br>**<u>ORDER</u>** |

  This matter is before the Court upon Defendants' motion to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Also before the Court is Plaintiffs' motion to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a). For the following reasons, the Court grants Defendants' motion to dismiss as to Plaintiffs' first and third causes of action, denies Defendants' motion to dismiss as to Plaintiffs' second and fourth causes of action, and grants Plaintiffs' motion for leave to file an amended complaint.

**<u>SUMMARY OF FACTUAL ALLEGATIONS</u>**

  On March 18, 2011, Plaintiffs filed this action against Defendants in the Court of Common Pleas for Beaufort County, South Carolina. The complaint alleges claims for (1) violations of the Lanham Act, 15 U.S.C. §§ 1501 et seq.; (2) Misappropriation—Common Law/Invasion of Privacy; (3) violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code § 39-5-10 et seq.; and (4) Breach of Contract—Settlement Agreement. On May 25, 2011, Defendants filed their Notice of Removal.

1

The parties to this action were involved in a previous lawsuit in this Court, Civil Action No. 9:04-22261-23, wherein Plaintiffs sought damages for (1) breach of contract accompanied by a fraudulent act; (2) wrongful termination; (3) tortuous interference with a contractual relationship; (4) violation of the South Carolina Unfair Trade Practices Act; (5) civil conspiracy; (6) conversion; (7) unjust enrichment; and (8) reparative injunction.  On September 18, 2006, the parties to the previous lawsuit entered into a Confidential Settlement and Release Agreement whereby the matter was resolved.  Plaintiffs allege that in the years subsequent to the previous civil action, Defendants sent written correspondence to their policyholders whereby Defendants represented that Plaintiffs continued to serve as agents for the Defendants.  Plaintiffs further allege that Defendants have profited from the use of Plaintiffs' name in their correspondence to policyholders and have resulted in lost profits for Plaintiffs.  Plaintiffs also allege that Defendants have failed to honor and perform several specific requirements of the settlement agreement reached in the previous litigation.  Defendants deny these allegations.

On June 1, 2011, Defendants filed their Motion to Dismiss and Memorandum in Support of the Motion to Dismiss.  In summary, Defendants' grounds for seeking dismissal are that (1) Plaintiffs' claim that Defendants have violated the Section 43(a) of the Lanham Act is preempted by the McCarran-Ferguson Act; (2) Plaintiffs' claim alleging that Defendants violated SCUTPA should be dismissed because the business of insurance is specifically exempted from the coverage of SCUTPA and because Defendants' actions fail to constitute violations of SCUTPA; and (3) Plaintiffs' Misappropriation/Common Law Invasion of Privacy and Breach of Contract claims fail to allege sufficient facts in support of those causes of action.

After receiving an extension of time to file a response, Plaintiffs filed their response in opposition to Defendants' Motion to Dismiss on June 24, 2011.  Also on that day, Plaintiffs filed

a Motion to Amend the Complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

## **STANDARD OF REVIEW**

It has been noted that "[a] motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted is a challenge to the legal sufficiency of a complaint." *Federal Trade Comm'n v. Innovative Mktg., Inc.,* 654 F.Supp.2d 378, 384 (D. Md. 2009). The Supreme Court has recently held that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955 (2007)). The Supreme Court noted that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and noted that "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. See also Harman v. Unisys Corp.,* 2009 WL 4506463 *2 (4th Cir.2009). The Court added that "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions," and that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Court further noted that "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

The motion to amend is considered under the liberal standard of Rule 15(a) of the Federal Rules of Civil Procedure which provides that the court should "freely give leave [for amendment] when justice so requires." While this court is given discretion to deny the motion to

3

amend, "that discretion is limited by the interpretation given Rule 15(a) in *Foman* [ *v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)], 'and by the general policy embodied in the Federal Rules favoring resolution of cases on their merits.' " *Island Creek Coal Co. v. Lake Shore, Inc.,* 832 F.2d 274, 279 (4th Cir.1987) (citation omitted). Upholding the letter and the spirit of this rule, "leave to amend a pleading should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro,* 178 F.3d 231, 242 (4th Cir.1999) (quoting *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 509 (4th Cir.1986)) (emphasis in original). A delay in bringing a proposed amendment is insufficient reason to deny leave to amend. *Id.*

For a motion to amend to be denied for futility, the amendment must be "clearly insufficient or frivolous on its face." *Oroweat Foods Co.,* 785 F.2d at 510-511; *see also Rambus, Inc. v. Infineon Tech., AG,* 304 F.Supp.2d 812, 819 (E.D. Va.2004) ("Courts generally favor the 'resolution of cases on their merits' ... [t]hus the substantive merits of a proposed claim [or defense] are typically best left for later resolution, *e.g.,* under motions to dismiss or for summary judgment, ..., or for resolution at trial.") (quoting *Davis v. Piper Aircraft Corp.,* 615 F.2d 606, 613 (4th Cir.1980)); *see also Robinson v. GEO Licensing Co., L.L.C.,* 173 F.Supp.2d 419, 423 (D.Md.2001).

## ANALYSIS

**I.    PLAINTIFFS' CLAIM UNDER THE LANHAM ACT.**

Plaintiffs' first cause of action is for violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which provides for a civil action for false advertising. Specifically, Section 43(a) states in pertinent part:

4

> Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person,
>  . . .
>
> shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). Defendants argue that Plaintiffs' Lanham Act claim should be dismissed because the McCarran-Ferguson Insurance Regulation Act ("the McCarran-Ferguson Act" or "the McCarran Act"), 15 U.S.C. § 1011 et seq., prohibits the application of Section 43(a) of the Lanham Act to regulate advertising by insurance companies. Defendants argue that "[t]he McCarran-Ferguson Act, enacted to preserve state regulation of activities of insurance companies unless the federal act specifically related to the business of insurance, preempts Plaintiffs' cause of action for violation of the Lanham Act." Defs' Mem. at 3. Specifically, § 2(b) of the McCarran-Ferguson Act provides the following:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance.[1]

15 U.S.C. § 1012(b). The Supreme Court has extensively discussed the history and purpose underlying the McCarran-Ferguson Act. *See, e.g., United States Dept. of Treasury v. Fabe,* 508 U.S. 491 (1993); *Group Life & Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 217-31 (1979); and *SEC v. Nat'l Sec., Inc.,* 393 U.S. 453, 457-60 (1969). Simply stated, Congress' primary purpose in enacting the McCarran-Ferguson Act "was to preserve state regulation of the

---

[1] The McCarran-Ferguson Act contains a second clause with the primary purpose of giving insurance companies a limited exemption from the antitrust laws; however, this clause is not at issue in this case.

5

activities of insurance companies, as it existed before the *South-Eastern Underwriters* case." *Royal Drug,* 440 U.S. at 218 n. 18. In *South-Eastern Underwriters,* "the Supreme Court departed from the then-accepted principle that the issuance of an insurance policy is not a transaction of commerce subject to federal regulation." *Colonial Life & Accident Ins. Co. v. Am. Family Life Assurance Co.,* 846 F. Supp. 454, 457 (D.S.C. 1994). "Prior to *South-Eastern Underwriters,* 'the States enjoyed a virtually exclusive domain over the insurance industry.'" *Id.* "The decision in *South-Eastern Underwriters* 'provoked widespread concern that the States would no longer be able to engage in taxation or effective regulation of the insurance industry.'" *Id.* Thus, in Section 1 of the McCarran-Ferguson Act, Congress declared the underlying policy 0of the Act to be that:

> [T]he continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.

15 U.S.C. § 1011. "This provision of the McCarran-Ferguson Act 'overturned' normal rules of federal pre-emption: 'Ordinarily a federal law supersedes any inconsistent state law. The first clause of § 2(b) reverses this by imposing what is, in effect, a clear-statement rule, a rule that state laws 'for the purpose of regulating the business of insurance' do not yield to conflicting federal statutes unless a federal statute specifically requires otherwise.'" *Colonial Life,* 846 F. Supp. at 457.

To determine whether the McCarran Act applies, the Court considers the threshold question to be whether the activity complained of constitutes the "business of insurance." *See, e.g., Highmark, Inc. v. UPMC Health Plan, Inc.,* 276 F.3d 160, 166 (3d Cir. 2001). If the activity does not constitute the "business of insurance," then the McCarran Act does not apply. *Id.* However, if the activity does constitute the "business of insurance," the court then decides

whether § 1012(b) precludes a federal cause of action. *Id.* Federal jurisdiction is barred under the McCarran Act if three requirements are met: (1) the federal law at issue does not specifically relate to the business of insurance; (2) the state law regulating the activity was enacted for the purpose of regulating the business of insurance; and (3) applying federal law would invalidate, impair, or supersede the state law. *Id.; Colonial Life,* 846 F. Supp. at 457-58 (citing *Fabe,* 508 U.S. ---).

As for the threshold question, the Court finds that the activity complained of—advertising insurance to policyholders—constitutes part of the business of insurance. Therefore, the Court finds that the McCarran Ferguson Act is applicable to this case. The Complaint alleges that Defendants sent written correspondence to their policy holders whereby Defendants represented to their policy holders that the Plaintiffs continued to serve as agents for their respective insurance policies. Plaintiffs allege that such usage induces, or is likely to induce, current and/or prospective policyholders to believe, contrary to facts, that Defendants' services are performed by, approved by, or otherwise connected in some way with the Plaintiffs or with the Plaintiffs' services. The Court finds that this alleged activity constitutes part of the business of insurance. *See, e.g., Highmark,* 276 F.3d at 167; *Fed. Trade Comm'n v. Nat'l Cas. Co.,* 357 U.S. 560, 562-63 (1958); *SEC v. Nt'l Sec., Inc.,* 393 U.S. 453, 460 (1969) (advertising is the business of insurance).

Plaintiffs argue that the activity complained of in the Complaint does not constitute the business of insurance. Plaintiffs note that while a number of courts, including a District of South Carolina Court in *Colonial Life*, have found the advertising of insurance policies to fall within the business of insurance, the facts at issue are distinguishable as they do not relate to an advertising dispute between two rival insurance companies. Pls' Mem. at 5-6. Plaintiffs argue

7

that because the business relationship between Plaintiffs and Defendants ended in 2004, there can be no relationship that could rise to the characterization of the "business of insurance."

> The first question facing this Court is whether Conseco's alleged actions involve the business of insurance. At the conclusion of the previous lawsuit involving these same parties, the business relationship between these same Plaintiffs and Defendants was dissolved. The parties executed the confidential settlement agreement on September 18, 2006. Plaintiffs' affiliation with Defendants effectively ended as a result of the Plaintiffs' termination in 2004, and was concluded officially pursuant to the terms of the confidential settlement agreement in 2006. Plaintiffs' claims in this matter do not seek any redress on behalf of any of the Defendants' policy holders and are limited to letters that Defendants have improperly distributed containing Plaintiffs' trade name, identity and likeness. There is no relationship between the Plaintiffs and Defendants and consequentially no business relationship that could rise to the characterization of "business of insurance." Further, even if some indicia of business relationship remained between the parties, the unauthorized dissemination of letters by Defendants containing identifying information regarding the Plaintiffs does not constitute the practice of insurance and the McCarran-Ferguson Act does not preempt Plaintiffs' claim.

Pls. Mem. at 5-6. As noted by Plaintiffs, many courts, including the District Court in *Colonial Life,* have found that the advertising practices of insurance companies fall within the "business of insurance" for purposes of the McCarran-Ferguson Act. While Plaintiffs try to distinguish *Colonial Life* from the facts in this case, the Court finds that it is a distinction without difference and finds the reasoning of *Colonial Life* in finding that advertising practices fall within the "business of insurance" to be directly on point in this case.

In *Colonial Life*, an insurance company brought an action seeking a declaration that the use of its federally registered service mark, "THE LEADER IN PAYROLL MARKETING," was not actionable as false advertising under the Lanham Act. 846 F. Supp. 454 (D.S.C. 1994). One of the insurance company's competitors filed counterclaims including claims that the use of the service mark constitutes false and deceptive advertising in violation of the Lanham Act, the Georgia Uniform Deceptive Trade Practices Act, and the South Carolina Unfair Trade Practices

8

Act.  On the insurance company's motion for partial summary judgment, the district court held that (1) the McCarran-Ferguson Act operated to preempt the false advertising action brought against the insurance company under the Lanham Act, and (2) that the alleged false advertising claim was exempt from coverage under the Georgia Uniform Deceptive Trade Practices Act and SCUTPA.  *Id.*  In finding that the McCarran Act operated to preempt the Lanham Act claim, the district court found that advertising practices by insurance companies are included within the meaning of the phrase "business of insurance" as that phrase is used in the first clause of the McCarran-Ferguson Act.  *Id.* at 458-460.

The *Colonial Life* court based its holding that advertising constitutes the "business of insurance" in large part on the Supreme Court's language in *National Securities* and *Fabe.*  In *National Securities,* the Supreme Court observed that "[t]he relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement—these were the core of the 'business of insurance.'"  *Nat'l Sec.,* 393 U.S. at 460.  "Undoubtedly, other activities of insurance companies relate so closely to their status as reliable insurers that they must be placed in the same class.  But whatever the exact scope of the statutory term, it is clear where the focus was—it was on the relationship between the insurance company and the policyholder."  *Id.*  *Colonial Life* noted that "[i]mportantly, the Supreme Court expressly stated that '[t]he selling and advertising of policies' is within the scope of the McCarran-Ferguson Act."  *Colonial Life,* 846 F. Supp at 460 (citing *National Securities,* 393 U.S. at 460).

The advertising at issue in this case is in the context of Defendants' communications with its own policyholders.  Despite Plaintiffs' attempt to distinguish *Colonial Life,* the Court finds that case to be directly on point and based on the analysis in *Colonial Life*, the Court concludes that the advertising practices at issue in this case fall within the "business of insurance" as that

9

phrase is used in the first clause of the McCarran-Ferguson Act. *Id.; see also Highmark,* 276 F.3d at 167 (concluding that advertising constitutes the business of insurance).

Having determined that the activity complained of in the Complaint constitutes the "business of insurance," and that the McCarran-Ferguson Act applies, the Court must now determine whether the McCarran Act, specifically § 1012(b), precludes Plaintiffs' Lanham Act claim. Plaintiffs' Lanham Act claim is barred under the McCarran Act if three requirements are met: (1) the federal law at issue does not specifically relate to the business of insurance; (2) the state law regulating the activity was enacted for the purpose of regulating the business of insurance; and (3) applying federal law would invalidate, impair, or supersede the state law. *Id.; Colonial Life,* 846 F. Supp. at 457-58. Plaintiffs claim that even if the Court finds that the activity involved in this case constitutes the business of insurance, the McCarran-Ferguson Act still does not bar Plaintiffs' Lanham Act claim because the claim would not invalidate, impair, or supersede South Carolina's laws regulating insurance.

As to prong one, both parties agree and the Court finds that the Lanham Act does not specifically relate to the business of insurance. See Pls' Mem. at 6; Defs' Mem. at 3. As to the second prong, the South Carolina law regulating the activity was enacted for the purpose of regulating the business of insurance. South Carolina Code Section 38-57-50 provides:

> No person may make, publish, disseminate, circulate, or place before the public or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in a newspaper, magazine, or other publication, in the form of a notice, circular, pamphlet, letter, or poster, or over any radio station, television, or in any other way, an advertisement, announcement, or statement containing an assertion, representation, or statement with respect to the business of insurance or with respect to any person in the conduct of his insurance business which is untrue, deceptive, or misleading.

South Carolina Insurance Trade Practices Act ("SCITPA"), S.C. Code Ann. § 38-57-50, "False Information or Advertising as to Insurance Business Prohibited."[2] The Court finds that this statute was enacted "for the purpose of regulating the business of insurance." The court incorporates the analysis from *Colonial Life* and the discussion of what constitutes "the business of insurance" above into its conclusion, here, that S.C. Code Ann. § 38-57-50 is a statute enacted for the purpose of regulating the business of insurance. *See Colonial Life,* 846 F. Supp. at 458-461. The Court also notes, as did the *Colonial Life* court, that the South Carolina legislature expressed its purpose in enacting these laws as being the regulation of the business of insurance under the McCarran-Ferguson Act. *See* S.C. Code Ann. § 38-57-10.

Finally, the Court must decide whether applying federal law would invalidate, impair, or supersede South Carolina law. Plaintiffs argue that even if the complained of activity constitutes the business of insurance, the Court should still find that the McCarran-Ferguson Act does not prohibit Plaintiffs' claim under the Lanham Act because applying the Lanham Act in this case would not invalidate, impair, or supersede South Carolina law. Plaintiffs argue that to the contrary of invalidating, impairing or superseding South Carolina law, applying the Lanham Act would complement South Carolina statutory and common law claims for relief.

The Court finds that applying the Lanham Act in this case would invalidate, impair, or supersede South Carolina Code section 38-57-50.[3] A federal law impairs a state law if: (1) it

---

[2] Defendants also argue that S.C. Code Ann. § 38-57-40 directly regulates the conduct of which Plaintiffs complain. That section provides: "No person may make, issue, circulate, or cause to be made, issued, or circulated any estimate, proposal, circular, or statement misrepresenting the terms of a policy issued or to be issued or the benefits or advantages represented thereby or the dividends or share of the surplus to be received thereon, or make a false or misleading statement as to the dividend or share of surplus previously paid on similar policies or make a misrepresentation as to the financial condition of an insurer or as to the legal reserve system upon which an insurer operates or use any name or title of a policy or class of policies misrepresenting the true nature thereof."

[3] The *Colonial Life* case is not as illustrative on this point because in that case the parties conceded at oral argument that "the application of Section 43(a) of the Lanham Act . . . would invalidate, impair, or supersede . . . S.C. Code Ann. § 38-57-50." *Colonial Life,* 846 F. Supp. at 458.

11

directly conflicts with the state law; (2) applying federal law would frustrate any declared state policy; or (3) applying federal law would interfere with a state's administrative regime. *Humana Inc. v. Forsyth,* 525 U.S. 299, 310 (1999). A federal law supersedes a state law if it "displace[s] (and thus render[s] ineffective) [state law] while providing for a substitute rule." *Id.* at 307.

The Court finds that applying the Lanham Act in this case would impair South Carolina law, specifically because applying the Lanham Act would frustrate South Carolina's declared state policy. As stated above, the declaration of purpose section to Chapter 57 of Title 38, § 38-57-10, provides: "The purpose of this chapter is to regulate trade practices in the business of insurance in accordance with the intent of Congress as expressed in the [McCarran-Ferguson Act] by defining, or providing the determination of, all the practices in this State which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined." The Court finds that this statement by the legislature represents a clear policy of the State that Chapter 57 of Title 38 is clearly intended to define and regulate all unfair trade practices in the business of insurance, including misrepresentations by insurance companies to policy holders and/or prospective policy holders. The Court agrees with Defendants that "the conduct of which Plaintiffs complain—Defendants' written correspondence to its policy holders allegedly misrepresenting Plaintiffs' affiliation with Defendants—is directly regulated by the South Carolina Insurance Trade Practices Act ("SCITPA"), S.C. Code [§§] 38-57-40 [and 38-57-50], and, therefore, application of the Lanham Act would impair the SCITPA." Defs' Mem. at 4.

Therefore, having determined that the activity complained of constitutes the "business of insurance" and that the three statutory requirements bar federal jurisdiction, the Court dismisses

Plaintiffs' Lanham Act claim because it is preempted by South Carolina state law pursuant to the McCarran Ferguson Act.

## II.     PLAINTIFFS' CLAIM UNDER THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT.

Plaintiffs' third cause of action alleges that Defendants violated the South Carolina Unfair Trade Practices Act ("SCUTPA") by representing in written correspondence to Defendants' policy holders that Plaintiffs are agents of the Defendants. Defendants have moved to dismiss Plaintiffs' third cause of action on the grounds that SCUTPA does not apply to the business of insurance, as Section 39-5-40 of the South Carolina Code exempts the business of insurance from the coverage of SCUTPA. Defs' Mem. at 4. Plaintiffs argue that the conduct complained of does not constitute "the business of insurance" and, therefore, claim that their third cause of action is not precluded by the South Carolina Insurance Trade Practices Act ("SCITPA").

The Court finds that because the alleged conduct is expressly governed by the South Carolina Insurance Trade Practices Act, Plaintiffs cannot recover under the South Carolina Unfair Trade Practices Act. The Court also notes that the case of *Nelson Mullins Riley & Scarborough, LLP v. Aon Risk Servs.,* Civil Action No. 4:04-21962-TLW, 2008 WL 3049850 (D.S.C. 2008) directly addresses this issue, and the analysis in that case is incorporated into this order for purposes of the Court's holding with respect to Plaintiffs' SCUTPA claim.

Section 39-5-40(c) of SCUTPA states: "[t]his article does not supersede or apply to unfair trade practices covered and regulated under Title 38, Chapter 57, §§ 38-57-10 through 38-55[sic]-320." S.C. Code Ann. § 39-5-40(c). As stated above, the declaration of purpose section to Chapter 57 of Title 38, § 38-57-10, provides: "The purpose of this chapter is to regulate trade practices in the business of insurance ... by defining, or providing the determination of, all the

13

practices in this State which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined." Chapter 57 clearly is intended to define and regulate all unfair trade practices in the business of insurance. SCUTPA, through § 39-5-40(c), provides a clear exemption for the practices covered by Chapter 57. Therefore, it is reasonable to conclude that all unfair trade practices regarding the insurance business are regulated by the Insurance Trade Practices Act, §§ 38-57-10 *et seq.*, and are exempt from the coverage of SCUTPA.

Plaintiffs assert that the alleged conduct does not involve the "business of insurance," this Court does not find that argument to be sufficiently persuasive given the facts of the case at bar and as thoroughly discussed above and in *Colonial Life*. Plaintiffs allege that Defendants violated SCUTPA by representing in written correspondence to Defendants' policy holders that Plaintiffs are agents of the Defendants. The alleged improper conduct of which Plaintiffs complain is arguably covered by the Insurance Practices Act.

Again, Section 39-5-40(c) provides that the SCUTPA does not supersede or apply to unfair trade practices covered and regulated under the Insurance Practices Act. Under Sections 38-57-40 and 38-57-50, misrepresentations in advertisements or letters to policy holders are regulated under the Insurance Practices Act as an unfair trade practice in South Carolina. Therefore, the Court concludes that because Sections 38-57-40 and 38-57-50 and the conduct proscribed therein fall within the exemption from the SCUTPA set forth in Section 39-5-40(c), Plaintiffs' unfair trade practices claim fails. *See Trustees of Grace Reformed Episcopal Church v. Charleston Ins. Co.,* 868 F. Supp. 128, 130-131 (D.S.C. 1994) (indicating that by precluding unfair trade practices covered and regulated under Chapter 57, § 39-5-40(c) exempts from the coverage of SCUTPA all unfair trade practices in the business of insurance); *Colonial Life &*

14

*Acc. Ins. Co. v. American Family Life Assur. Co.,* 846 F. Supp. 454, 463 (D.S.C. 1994); *Nelson Mullins Riley & Scarborough, LLP v. Aon Risk Servs.,* Civil Action No. 4:04-21962-TLW, 2008 WL 3049850 (D.S.C. 2008).  Accordingly, the Court dismisses Plaintiffs' third cause of action for violations of the South Carolina Unfair Trade Practices Act.

### III.     PLAINTIFFS' SECOND AND FOURTH CAUSES OF ACTION AND PLAINTIFFS' MOTION TO AMEND.

Plaintiffs' second cause of action alleges "Misappropriation—Common Law / Invasion of Privacy," and Plaintiffs' fourth cause of action alleges "Breach of Contract—Settlement Agreement."  Defendants move to dismiss these claims because they claim that Plaintiffs have failed to allege sufficient facts in support of the second and fourth causes of action pursuant to *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The Supreme Court has interpreted this rule to require "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 129 S. Ct. 1937 (quoting *Twombly*, 550 U.S. 544 at 570).  "A Claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949.

The Court finds that as to Plaintiffs' second cause of action, the complaint states sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Plaintiffs' second cause of action addresses their claim for Misappropriation/Common Law Invasion of Privacy.  The factual pleadings provide that after the resolution of Plaintiffs' wrongful termination suit against the Defendants in 2006, Defendants continued to send written

15

correspondence that represented that Plaintiffs continued to serve as Defendants' appointed agent for the policy holder. Compl. ¶ 14. Plaintiffs allege that the misappropriation of Plaintiffs' name was conducted without Plaintiffs' consent and likely was to the Plaintiffs' financial detriment. Compl. ¶ 14 and 16. Plaintiffs claim that these facts "represent[] a clear misappropriation of Plaintiffs' name, states a claim that is plausible on its face, and allows the court to reasonably infer that the Defendants are liable for the misconduct alleged in the Complaint." Pls' Mem. at 9.

South Carolina law recognizes three separate and distinct causes of action for invasion of privacy: (1) wrongful appropriation of personality; (2) wrongful publicizing of private affairs; and (3) wrongful intrusion into private affairs. *See Gignilliat v. Gignilliat, Savitz & Bettis, LLP,* 684 S.E.2d 756, 759 (S.C. 2009). A cause of action for wrongful appropriation of personality involves the intentional, unconsented use of the plaintiff's name, likeness, or identity by the defendant for his own benefit. *Id.* at 762. "To plead misappropriation of identity, the plaintiff must claim 'an appropriation without consent, of one's name or likeness for another's use or benefit." *Id.* The Court finds that based on the facts presented in the Complaint, Plaintiffs' second cause of action states sufficient facts to state a claim for relief that is plausible on its face.

Plaintiffs' fourth cause of action addresses Defendants' alleged Breach of Contract of the Settlement Agreement. In support of this cause of action, Plaintiffs allege that the parties entered into a binding settlement agreement on September 18, 2006. Compl. ¶ 39. Plaintiffs further allege that "Defendants have breached this settlement agreement in failing to fulfill and carry out the terms for which the Defendants clearly and unambiguously contracted." Compl. ¶ 40. Defendants note that Plaintiffs fail to city any provision of the settlement agreement alleged to

16

have been breached by Defendants and fail to describe any other manner in which Defendants have breached the settlement agreement.

Plaintiffs admit that as to their fourth cause of action, the Complaint does not contain sufficient factual matter to state a claim to relief that is plausible on its face. Plaintiffs claim that they intentionally omitted facts that pertain to this claim as to not violate the confidential terms of their settlement agreement. Additionally, Plaintiffs have moved for leave to amend their Complaint to include information relating to the confidential settlement agreement, which would serve to bring their fourth cause of action within the pleading requirements of Rule 8(a)(2). Plaintiffs "move that the Court grant Plaintiffs leave to use the terms of the confidential settlement agreement in their Amended Complaint." Pls. Motion to Amend Complaint at 2. Plaintiffs state that "after obtaining the Court's leave to proceed without penalty for noting specific items not adhered to in the confidential settlement agreement, Plaintiffs would amend their Complaint accordingly and remove all doubt about the sufficiency of their pleadings." Pls' Response in Opp. to Defs' Motion to Dismiss at 10.

Defendants oppose Plaintiffs' motion to amend. Defendants argue that Plaintiffs could have at least described the manner in which Defendants allegedly breached the settlement agreement without actually disclosing the settlement terms. Defs' Reply at 7. Additionally, Defendants argue that Plaintiffs do not explain in their response to Defendants' motion to dismiss or in their motion to amend how they will amend their Complaint to meet the federal pleading requirements and also fail to attach a proposed amendment or statement indicating how they might wish to amend the Complaint so that the Court could determine whether leave to amend is appropriate and denies Defendants the ability to respond to the purported amendment. Id.

As stated above, a motion to amend is considered under the liberal standard of Rule 15(a) of the Federal Rules of Civil Procedure which provides that the court should "freely give leave [for amendment] when justice so requires." While this court is given discretion to deny the motion to amend, "that discretion is limited by the interpretation given Rule 15(a) in *Foman* [ *v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)], 'and by the general policy embodied in the Federal Rules favoring resolution of cases on their merits.'" *Island Creek Coal Co. v. Lake Shore, Inc.,* 832 F.2d 274, 279 (4th Cir.1987) (citation omitted). Upholding the letter and the spirit of this rule, "leave to amend a pleading should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro,* 178 F.3d 231, 242 (4th Cir.1999) (quoting *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 509 (4th Cir.1986)) (emphasis in original). A delay in bringing a proposed amendment is insufficient reason to deny leave to amend. *Id.*

Under the standard for granting amendments as described above, the Court grants Plaintiffs leave to amend their complaint. Additionally, the Court notes that removal was based upon federal question jurisdiction. However, Defendants asserted that in the alternative, subject matter jurisdiction existed under diversity jurisdiction. In their notice of removal, Defendants noted that Plaintiffs' complaint does not allege a particular amount in controversy; however, based on the relief requested Defendants claimed that "there can be no question that Plaintiffs' claims satisfy the amount in controversy requirement." Defs' Notice of Removal at 8. As subject matter jurisdiction is not waivable and can be raised at any time and based upon the elimination of federal question jurisdiction in this case with the Court's dismissal of claims one

and three, the Court asks Plaintiffs to include a statement as to the amount in controversy in their proposed amended complaint.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss as to Plaintiffs' first and third causes of action, **DENIES** Defendants' motion to dismiss as to Plaintiffs' second and fourth causes of action, and **GRANTS** Plaintiffs' motion for leave to file an amended complaint.

**AND IT IS SO ORDERED**.

PATRICK MICHAEL DUFFY
United States District Judge

**August 29, 2010**
**Charleston, SC**

19